IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBBIN MESSERLI, individually and as personal representative of the Estate of Decedent Kyle Messerli, and on behalf of all others similarly situated,**

      **Plaintiff,**

v.

**AW DISTRIBUTING, INC.,
AW PRODUCT SALES & MARKETING, INC., FALCON SAFETY PRODUCTS, INC., AND NORAZZA, INC.,**

      **Defendants.**

Case No. 22-2305-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Robbin Messerli brings this product liability lawsuit individually and as personal representative of the Estate of Kyle Messerli and on behalf of all others similarly situated. Plaintiff is Kyle Messerli's father. In 2018, Kyle began inhaling—or huffing, as some refer to it—computer dusters. A computer duster is a product intended to remove lint and debris from computer keyboards and other equipment using an odorless gas called Difluoroethane (DFE). When inhaled, DFE produces an immediate intoxication. Kyle developed an addiction to the DFE found in computer dusters, eventually huffing up to four or more cans of computer duster each day. In August 2020, Kyle's family found him unconscious and surrounded by empty cans of computer duster. He died three days later from DFE intoxication. Kyle was just 29 years old when he died.

Plaintiff filed this action against four defendants who design and manufacturer computer dusters: (1) AW Distributing, Inc.; (2) AW Product Sales & Marketing, Inc.; (3) Falcon Safety

Products, Inc.; and (4) Norazza, Inc. This matter comes before the court on two motions filed by defendant Falcon Safety Products, Inc. ("Falcon"): (1) a Motion to Dismiss (Doc. 20); and (2) a Motion to Strike Class Allegations (Doc. 22).[1] Plaintiff has filed Responses opposing both motions (Docs. 51 & 52). And Falcon has filed Replies (Docs. 54 & 55).[2]

For reasons explained below, the court grants Falcon's Motion to Dismiss. The Complaint's allegations—taken as true and viewed in plaintiff's favor—assert claims arising from Kyle's inhalant abuse—*i.e.*, conduct that is illegal in Kansas and criminalized by Kansas statute. As a consequence, Kansas law prohibits plaintiff from recovering damages from Kyle's illegal acts. The court thus grants Falcon's Motion to Dismiss. And, with that outcome, there's no need to reach Falcon's Motion to Strike Class Allegations. It's moot.

## I.     Factual Background

The following facts come from plaintiff's Complaint (Doc. 1). The court accepts them as true and views them in the light most favorable to plaintiff. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

In 2018, one of Kyle Messerli's work colleagues introduced him to huffing and the intoxication it produces from inhaling DFE. Doc. 1 at 14 (Compl. ¶ 39). Not long after that, Kyle began abusing DFE as an inhalant and developed an addiction to huffing. *Id.* Kyle began

---

[1]     Falcon initially filed memoranda supporting its two motions that violated the court's local rule governing page limits on briefing. *See* Docs. 21 & 23. Consistent with the court's Order (Doc. 37), Falcon refiled its memoranda with leave to exceed the local rule's page limits by five pages (*see* Docs. 42 & 43).

[2]     Plaintiff also has filed three Notices of Supplemental Authority. Docs. 57, 58, & 59. None of the supplemental authority addresses the issue germane to this Order—whether Kyle Messerli's illegal acts bar plaintiff's product liability claims under Kansas law.

huffing up to four or more cans of computer duster per day.  *Id.*  At the same time, Kyle began missing work and behaving erratically.  *Id.*  He found himself in financial trouble and started overdrawing from his bank account to pay for his huffing addiction.  *Id.*  When Kyle's family learned of his addiction, they encouraged him to seek help.  *Id.* (Compl. ¶ 40).  Kyle agreed to go to therapy for his addiction, but therapy was unsuccessful.  *Id.*

Kyle preferred to huff a brand of computer duster called Ultra Duster.  *Id.* (Compl. ¶ 41).  Defendants AW Distributing, Inc. and AW Product Sales & Marketing, Inc. design, manufacture, and distribute Ultra Duster.  *Id.* at 6 (Compl. ¶ 12).  But also, Kyle huffed other brands, including Office Depot, Insignia, Surf onn., and other dusters manufactured by each of the defendants.  *Id.* at 14 (Compl. ¶ 41).  Defendants AW Distributing, Inc. and AW Product Sales & Marketing, Inc. design, manufacture, and distribute Office Depot and other third-party brands of computer dusters.  *Id.* at 6 (Compl. ¶ 13).  Defendant Falcon designs, manufactures, and distributes Insignia as well as other brands of computer dusters.  *Id.* at 6–7 (Compl. ¶¶ 14–15).  And defendant Norazza, Inc. designs, manufactures, and distributes Surf onn., and other brands of computer dusters too.  *Id.* at 7–8 (Compl. ¶¶ 16–17).

According to plaintiff, each of these dusters contributed to Kyle's addiction to DFE and eventually led to his death.  *Id.* at 14 (Compl. ¶ 42).  On August 1, 2020, Kyle's family found him unconscious at his home.  *Id.* at 14–15 (Compl. ¶ 43).  He was surrounded by empty cans of Ultra Duster.  *Id.*  An ambulance rushed Kyle to the hospital where he was placed on life support.  *Id.*  He never regained consciousness.  *Id.*  Three days later, he died.  *Id.*  Kyle's death certificate lists his cause of death as: "acute 1,1-Difluoroethane intoxication[.]"  *Id.*  Kyle was 29 years old at his death.  *Id.*

Kyle's father is the plaintiff in this lawsuit. *Id.* at 11–12 (Compl. ¶ 30). He brings this action individually and as representative of Kyle's estate—as well as on behalf of others similarly situated. *See generally id.* And he asserts claims against four defendants who design, manufacture, and distribute computer dusters—ones that allegedly contributed to Kyle's addiction and death. *See generally id.* Plaintiff alleges seven claims under Kansas law: (1) strict products liability – design defect; (2) strict products liability – failure to warn; (3) negligent design defect; (4) negligent failure to warn; (5) wrongful death; (6) breach of the implied warranty of merchantability; and (7) breach of express warranty. *Id.* at 60–79 (Compl. ¶¶ 156–263).

Defendant Falcon has filed a Motion to Dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(6). Doc. 20.[3] Among other arguments, Falcon asserts that the court should dismiss plaintiff's claims because they are based on Kyle's violations of Kansas law. And, defendants argue, Kansas law bars claims arising from illegal conduct.[4] *See id.*; *see also* Doc. 43 at 8–11;

---

[3] Falcon's Motion to Dismiss asks "that a hearing be set for oral argument if the Court believes that it would be helpful." Doc. 20 at 2. Our local rule, D. Kan. Rule 7.2, gives the court discretion to "set any motion for oral argument or hearing at the request of a party or on its own initiative." Here, the parties' papers carefully and effectively argue the issues raised by the Motion to Dismiss. An oral argument isn't necessary or consistent with Fed. R. Civ. P. 1. So, the court declines to conduct oral argument on this motion.

[4] Kansas law governs the claims asserted in this diversity action. *See* Doc. 1 at 13 (Compl. ¶ 36) (alleging that the court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a) and (c) because plaintiff is diverse from defendants and the amount in controversy exceeds $75,000). In a diversity case, like this one, the court applies the substantive law of the forum state, including its choice of law rules. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted). Kansas courts follow the rule of *lex loci delicti* for tort claims, applying the substantive law of the place where a tort occurred. *Anderson v. Commerce Constr. Servs., Inc.*, 531 F.3d 1190, 1193–96 (10th Cir. 2008); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985). Here, the Complaint alleges that the torts giving rise to plaintiff's claims occurred in Kansas—*i.e.*, the place where defendants sold their products, where Kyle Messerli purchased the products, and where Kyle died from inhaling DFE from computer duster products.

Doc. 55 at 2–3.  The court addresses Falcon's dismissal argument, below.  But first, it recites the legal standard governing a Rule 12(b)(6) motion to dismiss, like Falcon's.

## II.   Legal Standard

For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[,]'" which, as the Supreme Court explained, "'will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.   Analysis

Falcon asserts that the *in pari delicto* doctrine bars plaintiff's claims because plaintiff bases his claims on Kyle's violations of Kansas criminal law.[5]  As Falcon correctly asserts, in 2009, Kansas criminalized the unlawful abuse of toxic vapors when it codified Kan. Stat. Ann. §

---

[5] Falcon asserts four additional arguments supporting dismissal of some or all of plaintiff's claims. Because the court concludes that Kyle's illegal conduct bars each of plaintiff's claims, the court need not address Falcon's other dismissal arguments.

21-5712.[6]  The statute defines "[u]nlawful abuse of toxic vapors" as "possessing, buying, using, smelling or inhaling toxic vapors with the intent of causing a condition of euphoria, excitement, exhilaration, stupefaction or dulled senses of the nervous system." Kan. Stat. Ann. § 21-5712(a). The "term 'toxic vapors' means vapors from . . . products containing . . . halogenated hydrocarbons[.]" *Id.* § 21-5712(e)(7).  Violating this statute by unlawfully abusing toxic vapors qualifies as a class B nonperson misdemeanor. *Id.* § 21-5712(b).  And the statute requires courts—when imposing a fine or sentence for unlawfully abusing toxic vapors—to enter an order requiring "the person [to] enroll in and successfully complete an alcohol and drug safety action education program, treatment program or both such programs as provided in [Kan. Stat. Ann. §] 8-1008, and amendments thereto." *Id.* § 21-5712(c).

Falcon argues that Kyle engaged in illegal conduct prohibited by this Kansas statute when he huffed computer dusters. Plaintiff never disputes this point. Nor could he. The Complaint alleges that Kyle began huffing in 2018, after a coworker "introduced him to the immediate and intense intoxication from huffing DFE." Doc. 1 at 14 (Compl. ¶ 39). His "abuse" of DFE "quickly took over [his] life, plunging him into" addiction. *Id.* The Complaint concedes that "Kyle routinely huffed products manufactured by each of the" defendants. *Id.* at 11 (Compl. ¶ 28). It asserts that "Kyle visited numerous retailers on a weekly and sometimes daily basis to purchase various dusters to feed his addiction and to avoid suspicion of abusing

---

[6] The court may take judicial notice of this Kansas statute. *See United States v. One (1) 1975 Thunderbird 2–Door Hardtop White in Color with Burnt Orange Vinyl Landau Top*, 576 F.2d 834, 836 (10th Cir. 1978) (holding "trial judge clearly had a right to take judicial notice of the state statutes" (citing *Owings v. Hull*, 34 U.S. 607 (1835))); *see also United States v. Coffman*, 638 F.2d 192, 194 (10th Cir. 1980) ("That the courts are allowed to take judicial notice of statutes is unquestionable."); *Good v. U.S. Dep't of Educ.*, No. 21-CV-2539-JAR-ADM, 2022 WL 2191758, at *2 (D. Kan. June 16, 2022) (taking judicial notice of statutes on a motion to dismiss because "[s]tatutes are considered legislative facts of which a court can take judicial notice"); *Kaufman v. Cent. RV, Inc.*, No. 21-2007-EFM, 2022 WL 1500646, at *1 (D. Kan. May 12, 2022) (granting motion to take judicial notice of Arkansas, Kansas, and Nebraska statutes).

these dusters." *Id.* And, it alleges, Kyle was "huffing upwards of four cans of duster per day, often many more." *Id.* at 14 (Compl. ¶ 39). Eventually, the Complaint alleges, Kyle's addiction to DFE caused his death. *See id.* at 14–15 (Compl. ¶ 43) (alleging that Kyle's family found him unconscious surrounded by empty computer duster cans and that his death certificate listed his cause of death as "acute 1,1-Difuoroethane intoxication").

Accepting these facts as true, the Complaint alleges that Kyle violated Kan. Stat. Ann. § 21-5712's prohibition against the "[u]nlawful abuse of toxic vapors" by "possessing, buying, using, smelling or inhaling toxic vapors with the intent of causing a condition of euphoria, excitement, exhilaration, stupefaction or dulled senses of the nervous system." Kan. Stat. Ann. § 21-5712(a). Indeed, the Complaint alleges repeatedly that Kyle possessed, bought, used, and inhaled the toxic vapors contained in defendants' computer dusters.[7] And it alleges that Kyle committed these acts because he was addicted to the intoxicating effects of DFE. Thus, the Complaint alleges that Kyle committed illegal acts prohibited by Kan. Stat. Ann. § 21-5712.

Defendant Falcon argues that the *in pari delicto* doctrine bars plaintiff's claims because the Complaint premises the claims on Kyle's "own illegal acts[.]" Doc. 43 at 11. The Kansas Supreme Court has explained that the *in pari delicto* doctrine "requires when 'the wrong of the one party equals that of the other, the defendant is in the stronger position.'" *Goben v. Barry*, 676 P.2d 90, 97 (Kan. 1984) (quoting 27 Am. Jur. 2d *Equity* § 141). The doctrine "requires the

---

[7] The Complaint alleges that defendants' computer dusters contain "toxic vapors" as the statute defines that term. The "term 'toxic vapors' means vapors from . . . products containing . . . halogenated hydrocarbons[.]" Kan. Stat. Ann. § 21-5712(e)(7). The Complaint alleges that defendants' computer dusters "are composed almost entirely of" DFE—which is an odorless gas and halogenated hydrocarbon. Doc. 1 at 5, 8, 26–28 (Compl. ¶¶ 9, 18, 68); *see also id.* at 26–28 (Compl. ¶ 68) (describing DFE as "a halogenated hydrocarbon that works similarly to other abused inhalant products" and explaining that DFE, "[a]s a halogenated hydrocarbon . . . is well absorbed via the lung and rapidly distributed to organs with high fat content such as the brain"). Thus, DFE is a prohibited "toxic vapor" as the statute defines the term.

court to weigh the wrongful acts of each party" because the "purpose" of the doctrine "is to avoid allowing an overwhelmingly offensive act of the defendant to stand merely because the plaintiff's conduct was also wrongful, although slight." *Id.*

As our Circuit has noted, the "the principle of *in pari delicto* . . . is analogous to the wrongful-conduct doctrine." *Inge v. McClelland*, 725 F. App'x 634, 639 (10th Cir. 2018) (citing *Pinter v. Dahl*, 486 U.S. 622, 632 (1988)). In *Inge*, our Circuit applied New Mexico's wrongful conduct doctrine to affirm Rule 12(b)(6) dismissal of plaintiffs' state law claims alleging negligence, breach of fiduciary duty, and unfair, deceptive, and unconscionable trade practices in violation of the New Mexico Unfair Practices Act. *Id.* at 638–39. The plaintiffs in *Inges* brought these claims against a pharmacist who allegedly dispensed opioids and other narcotics to them for more than a year while knowing that the drugs provided no medical benefit and that plaintiffs were abusing the drugs. *Id.* at 636. The Circuit explained that "New Mexico law clearly preclude[d] [plaintiffs] from obtaining relief on a claim based on their own illegal conduct"— abusing prescription drugs—because, in New Mexico:

> It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws.

*Id.* at 638 (quoting *Desmet v. Sublett*, 225 P.2d 141, 142 (N.M. 1950)). The Circuit explained that the "public policy behind this rule is that a court should not 'lend its aid to a man who founds his cause of action upon an immoral or illegal act.'" *Id.* (quoting *Desmet*, 225 P.2d at 142).

The Circuit observed that *Inges*'s plaintiffs admitted that they had participated in a fraudulent scheme to acquire narcotic prescriptions, they "chose to purchase and consume the

8

narcotics they obtained through illicit means, and all of their purported injuries stem from these illegal acts." *Id.* The Circuit thus found "no error in the district court's inferring that [defendant's] conduct cannot be said to have been a greater cause of [plaintiffs'] injuries than [plaintiffs'] own unlawful behavior." *Id.* (citation and internal quotation marks omitted); *see also id.* (citing *Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 215–17 (Mich. 1995) (concluding Michigan's wrongful-conduct rule barred plaintiff's claims because his illegal use of a controlled substance caused his injuries)). Also, our Circuit noted, even "if [the defendant pharmacist] also engaged in illegal conduct, breached his duties to [plaintiffs], and benefited financially from the scheme, as [plaintiffs] argue, his conduct does not negate [plaintiffs'] own misconduct." *Id.* The Circuit thus affirmed the district court's decision to apply "the wrongful-conduct doctrine because there [was] no dispute that [plaintiffs'] lawsuit relie[d], at least in part, on their own illegal acts." *Id.*

While *Inge* involved New Mexico's wrongful conduct doctrine, the Tenth Circuit's decision is highly persuasive on the facts alleged here. That's because Kansas courts have promulgated a rule similar to the New Mexico rule at issue in *Inge*. That is, Kansas courts recognize an illegality defense that bars claims arising from a plaintiff's illegal conduct. Specifically, the Kansas courts have explained:

> The illegality defense is based on the principle that a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act. The defense will be applied to bar recovery if the evidence shows that the plaintiff freely and voluntarily consented to participate in the illegal act, without duress or coercion.

*Parker v. Mid-Century Ins.*, 962 P.2d 1114, 1116 (Kan. Ct. App. 1998) (first citing Kan. Stat. Ann. § 60-208(c); then citing *Lee v. Nationwide Mut. Ins.*, 497 S.E.2d 328, 329 (Va. 1998)); *see also Beggerly v. Walker*, 397 P.2d 395, 401 (Kan. 1964) (explaining that "a wrongdoer is

9

deprived of the law's protection" when "his illegal act" has "a causal connection with his injury"); *McKenzie v. Foley*, No. 71,381, 1995 WL 18253130, at *3 (Kan. Ct. App. Aug. 11, 1995), *review denied*, 900 P.2d 240, 1995 WL 478537 (Kan. Sept. 26, 1995) ("Under Kansas law, a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequences of that act."). *Cf. Thomas v. Benchmark Ins.*, 140 P.3d 438, 449 (Kan. Ct. App. 2006) (explaining that while defendant "correctly point[ed] to *Parker* as an authoritative application of the illegality defense," there were "crucial differences between the facts of" *Parker* "and of the present situation" because the facts didn't show that the alleged wrongdoers "freely and voluntarily consented to participating in fleeing or eluding the officer, without duress or coercion[,]" but instead, "the uncontroverted evidence was that [the alleged wrongdoers] actively opposed [a third party's] illegal conduct[,]" and thus, the record "could not support an illegality defense").

Applying the Kansas version of this doctrine to the facts here, the Complaint alleges that Kyle Messerli "freely and voluntarily consented to participate in the illegal act" of huffing computer dusters. *Parker*, 962 P.2d at 1116; *see also* Doc. 1 at 14 (Compl. ¶ 39) (alleging that Kyle began huffing computer dusters in 2018, after work colleague introduced him to the intoxicating effects of inhaling DFE). Kan. Stat. Ann. § 21-5712 criminalizes this conduct. Also, the Complaint alleges that Kyle's illegal acts had "a causal connection with his injury[,]" *Beggerly*, 397 P.2d at 401, because it alleges that Kyle's huffing caused his death, *see, e.g.*, Doc. 1 at 14–15 (Compl. ¶ 43) (alleging that Kyle's family found him unconscious surrounded by empty computer duster cans and that his death certificate listed his cause of death as "acute 1,1-Difuoroethane intoxication"). And each one of plaintiff's claims arises from Kyle's illegal acts of huffing computer duster. *See, e.g.*, Doc. 1 at 65 (Comp. ¶ 179) (alleging that defendants are

liable for Count I (strict products liability – design defect) based on Kyle's use of computer dusters that placed him "at an increased risk of becoming addicted to DFE . . . of inhaling more DFE . . . and ultimately at an increased risk of suffering injury, including death by using [d]efendants' products" to huff DFE from computer dusters); *see also id.* at 68 (Compl. ¶ 196) (alleging that defendants are liable for Count II (strict products liability – failure to warn) because defendants failed to warn Kyle and others adequately about the dangers of inhaling DFE from computer dusters); *id.* at 72 (Compl. ¶ 219) (alleging that defendants are liable for Count III (negligent design defect) because Kyle and others faced increased risks from using defendants' product for huffing); *id.* at 75 (Compl. ¶ 237) (alleging defendants are liable for Count IV (negligent failure to warn) because they failed to warn of the "inherent risks, dangers, or hazards" of inhaling DFE by huffing computer dusters); *id.* at 76 (Compl. ¶ 245) (alleging a wrongful death claim (Count V) by plaintiff and other putative class members who bring this claim on behalf of their "decedents who died after using [d]efendants' products" for huffing DFE); *id.* at 77, 78 (Compl. ¶¶ 251, 261) (alleging in Counts VI and VII that defendants breached express and implied warranties about their products but also alleging elsewhere that Kyle and others used the products for huffing). Based on the facts alleged in the Complaint—taking them as true and viewing them in plaintiff's favor—the illegality defense applies to plaintiff's claims against defendant Falcon because each claim arises from Kyle's illegal conduct—huffing DFE from computer dusters in violation of Kan. Stat. Ann. § 21-5712. *See Parker*, 962 P.2d at 1116; *see also McKenzie*, 1995 WL 18253130, at *3 ("Under Kansas law, a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequences of that act.").

11

Plaintiff responds that it's not appropriate to apply the *in pari delicto* doctrine or an illegality defense on a Rule 12(b)(6) motion to dismiss. Instead, plaintiff contends, Kansas has codified the comparative fault rule under Kan. Stat. Ann. § 60-258a. Under that rule, plaintiff's contributory negligence doesn't bar recovery if his negligence was less than defendant's causal negligence. Instead, plaintiff's damage award is reduced by the amount of negligence attributed to him. Specifically, the cited comparative fault rule provides:

> The contributory negligence of a party in a civil action does not bar that party or its legal representative from recovering damages for negligence resulting in death, personal injury, property damage or economic loss, if that party's negligence was less than the causal negligence of the party or parties against whom a claim is made, but the award of damages to that party must be reduced in proportion to the amount of negligence attributed to that party. If a party claims damages for a decedent's wrongful death, the negligence of the decedent, if any, must be imputed to that party.

Kan. Stat. Ann. § 60-258a(a).

Plaintiff argues that the comparative fault rule applies to plaintiff's claims here. And, because plaintiff has alleged wrongdoing by defendants in their design, manufacture, and sale of computer dusters, plaintiff contends it's not appropriate at this stage of the case to weigh Kyle's fault, *i.e.*, using the products for huffing, against defendants' alleged wrongful conduct in the design, manufacture, and sale of the products.

Plaintiff cites several cases to support this argument. But none of them parallel the acts alleged here. Each one of plaintiff's cases involved *negligent* conduct by the plaintiff. And none of them involved *illegal* criminal conduct by the plaintiff that barred plaintiff from recovering civil damages arising from that illegal conduct. *See Goben v. Barry*, 676 P.2d 90, 97 (Kan. 1984) (refusing to apply *in pari delicto* doctrine to facts of the case because plaintiff "while practicing some questionable acts of tax avoidance, was negotiating with the government to meet his obligations[,]" and defendant "however, purposefully and wrongfully ousted his partner from

their joint venture and refused to account for the profits contrary to his fiduciary duty" and "solely [for] monetary gain[,]" and thus, the court couldn't find on those facts that plaintiff's "wrongful conduct outweighed" defendant's); *see also Miller v. CNH Indus. Am. LLC*, No. 6:20-cv-01293-TC, 2022 WL 17669107, at *11 (D. Kan. Dec. 14, 2022) (holding in a lawsuit brought for injuries sustained by plaintiff while operating a tractor that plaintiff's conduct—*i.e.*, exiting a tractor that he knew was in gear and moving forward—didn't warrant summary judgment for defendant because "while superseding causes are still recognized in extraordinary cases, in adopting comparative fault, Kansas courts have moved from 'all or nothing concepts' to having juries apportion[ ] fault among the parties" (citation omitted)); *In re Brooke Corp.*, 467 B.R. 492, 513 (D. Kan. 2012) (holding in a case involving competing negligence allegations in a business insolvency that "*in pari delicto* does not bar a negligence claim against" defendants because under "Kansas negligence law, comparative fault, not *in pari delicto*, addresses the issue of liability when the plaintiff as well as the defendant or defendants are alleged to be at fault"); *Reynolds v. Kan. Dep't of Transp.*, 43 P.3d 799, 804–05 (Kan. 2002) (applying comparative negligence in a wrongful death and personal injury action brought by driver and passengers in a vehicle that struck cow on a highway and explaining that the "nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the all or nothing concepts are swept aside" (citation and internal quotation marks omitted)); *Zimmerman v. Brown*, 306 P.3d 306, 314–16 (Kan. Ct. App. 2013) (reversing trial court's decision to apply *in pari delicto* doctrine on summary judgment to mutual misconduct in a legal malpractice claim and also refusing to apply the doctrine of illegality because "defendants did not allege, let alone present any evidence to establish, that the contract for sale of the plaintiffs' business to the

13

defendants violated any law" or the public policy of Kansas, and even if they had, defendants had failed to establish proximate cause on summary judgment).

As defendant Falcon argues, Kansas codified the comparative fault statute in 1974. *See* Kan. Stat. Ann. § 60-258a. And since then, Kansas courts have continued to apply the illegality defense to claims arising from a plaintiff's illegal conduct without citing the comparative fault rule. *See Parker*, 962 P.2d at 1116 (holding in 1998 that the illegality defense "will be applied to bar recovery if the evidence shows that the plaintiff freely and voluntarily consented to participate in the illegal act, without duress or coercion" (citations omitted)); *McKenzie*, 1995 WL 18253130, at *3 (recognizing in 1995 that under "Kansas law, a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequences of that act"). *Cf. Thomas*, 140 P.3d at 449 (recognizing in 2006 that defendant "correctly point[ed] to *Parker* as an authoritative application of the illegality defense," but holding that the factual record didn't support applying the illegality defense that case).

Also, the Tenth Circuit rejected a similar argument that the *Inge* plaintiffs asserted about New Mexico's comparative fault statute. They argued that New Mexico's wrongful conduct doctrine shouldn't apply to bar their state claims because of New Mexico's comparative fault law. The Circuit explained that the *Inge* plaintiffs' argument that "the wrongful-conduct doctrine is incompatible with New Mexico's comparative-fault framework is misplaced." *Inge*, 725 F. App'x at 638. The Circuit explained that the comparative negligence doctrine doesn't permit a plaintiff to profit from his wrongdoing—as the *Inge* plaintiffs tried to do with their state law claims against the defendant pharmacist. *Id.* at 639. The Circuit held that the *Inge* plaintiffs' "alleged injuries [did] not stem solely from [defendant's] conduct[,]" and as a consequence, the law doesn't "allow them to profit from their own illegal conduct." *Id.* (quoting *Orzel*, 537

14

N.W.2d at 219 ("To allow plaintiffs [who repeatedly and fraudulently engage in the illicit use of drugs] would in effect sanction illegal possession and use of controlled substances—and that this Court simply cannot do.") (further citation and internal quotation marks omitted)).

Plaintiff also asserts that the court shouldn't apply the illegality defense to plaintiff's claims because no Kansas court has applied the defense in a products liability case and the public policy underlying products liability actions doesn't support applying the defense to bar plaintiff's claims here. Plaintiff's premise is correct. No Kansas court has applied the illegality defense to foreclose a product liability lawsuit. But that fact alone doesn't mean the Kansas Supreme Court would refuse to apply the illegality defense to the facts alleged here. Indeed, the court predicts that the Kansas courts would apply this defense to plaintiff's claims here as Kansas courts have applied the defense to the non-product liability cases already discussed.

Also, the court predicts that Kansas courts would apply the illegality defense to the facts here just as courts from other jurisdictions have applied it, relying on public policy considerations in favor of barring claims arising from a plaintiff's illegal conduct. *See, e.g.*, *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 704–05 (E.D. Ky. 2003) (applying Kentucky's rule that "a plaintiff may not recover in a legal or equitable proceeding when the basis for such an action rests on their own illegal conduct" and granting summary judgment against plaintiffs' claims against drug manufacturers because they "procured and used OxyContin illegally[,]" and thus, could "not recover in this action"); *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 486 (Miss. 2006) (holding that Mississippi's wrongful conduct doctrine barred plaintiff's lawsuit alleging injuries from ingesting OxyContin because it was undisputed that plaintiff "obtained a controlled substance through his own fraud, deception, and subterfuge by misrepresenting his medical history and ongoing treatment to those from whom he sought

15

care" and this "offense [was] the central point to every claim on which he rested his already tenuous case," and thus "[s]ummary judgment was proper" while explaining the public policy rationale of the rule is that courts won't "lend aid to a party whose cause of action directly results from an immoral or an illegal act committed by that party"); *Orzel*, 537 N.W.2d at 213–15 (holding that Michigan's wrongful conduct doctrine barred plaintiff's claims against pharmacy for allegedly negligently and illegally filling plaintiff's prescription because plaintiff "repeatedly violated several provisions of the controlled substances act when he obtained, possessed, and used Desoxyn without a valid prescription" and listing several public policy goals achieved by the doctrine including that it: (1) doesn't "condone and encourage illegal conduct[,]" (2) prevents wrongdoers from "receiv[ing] a profit or compensation as a result of their illegal acts[,]" (3) avoids the public "view[ing] the legal system as a mockery of justice[,]" and (4) prevents wrongdoers from "shift[ing] much of the responsibility for their illegal acts to other parties"); *Oden v. Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So. 2d 953, 954–55 (Ala. 1993) (affirming summary judgment against plaintiff's product liability claims based on decedent's death from injuries he sustained when vending machine fell on him because it was undisputed that decedent "was stealing drinks from the vending machine when it fell on him," and in Alabama, a "person cannot maintain a cause of action if, in order to establish it, he must rely in whole or part on an illegal or immoral act or transaction to which he is a party" (citations and internal quotation marks omitted)); *Albert v. Sheeley's Drug Store, Inc.*, 234 A.3d 820, 824 (Pa. Super. Ct. 2020) (affirming trial court's application of Pennsylvania's *in pari delicto* doctrine to grant summary judgment because "[n]o court will lend its aid to a man who grounds his actions upon an immoral or illegal act[,]" and decedent, by "participating in the scheme to obtain the Fentanyl, and by illegally possessing the Fentanyl" in violation of Pennsylvania law, "was an

16

active, voluntary participant in the wrongful conduct or transaction(s) for which [plaintiff] seeks redress" and "bear[s] substantially equal or greater responsibility for the underlying illegality as compared to [defendant]" (citations and internal quotation marks omitted)); *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So. 2d 452, 454–55 (Fla. Dist. Ct. App. 2007) (affirming summary judgment against wrongful death claim against pharmacy for failing to safeguard controlled substances properly because the wrongful conduct doctrine barred recovery by decedent's estate when decedent voluntarily ingested OxyContin stolen from the pharmacy).[8]

For all these reasons, the court concludes that Kansas's illegality defense bars plaintiff's claims in this lawsuit. The court's conclusion doesn't ignore the grave loss plaintiff has sustained. His son died a tragic death from his addiction to DFE. But Kansas law is clear. Kyle's conduct—*i.e.*, huffing DFE from computer dusters—violated Kansas criminal law. And Kansas's illegality defense bars a plaintiff from recovering civil damages based on his own illegal acts—as plaintiff's product liability and wrongful death claims aspire to do here. The

---

[8] Plaintiff would have the court distinguish these cases from this one because they are summary judgment cases involving conduct that differs from the facts alleged here. Doc. 52 at 18 n.3 (asserting that the cases are "distinguishable by the nature of plaintiffs' conduct in obtaining the products (through fraud, deception, and subterfuge) and altering them before use"). The court doesn't see the difference. The summary judgment facts about the various plaintiffs' conduct is similar to many of the Complaint's allegations here about Kyle's illegal conduct. *See, e.g.*, Doc. 1 at 11 (Compl. ¶ 28) ("Leading up to his death and over the course of more than a year, Kyle routinely huffed products manufactured by each of the Defendants. Kyle visited numerous retailers on a weekly and sometimes daily basis to purchase various dusters to feed his addiction and to avoid suspicion of abusing these dusters."); *id.* at 14 (Compl. ¶ 39) (alleging that Kyle began abusing DFE and developed an addiction).

Nor does the difference in procedural posture—summary judgment versus motion to dismiss—persuade the court that they don't apply to the facts alleged here. On this Motion to Dismiss, the court applies Kansas's illegality defense to the facts alleged in the Complaint—taken as true and viewed in plaintiff's favor. Those facts—like the undisputed facts in the summary judgment cases—establish that plaintiff premises his claims on illegal conduct—*i.e.*, Kyle's violations of Kansas law by huffing DFE from computer dusters. Indeed, plaintiff never disputes that Kyle's conduct violated Kan. Stat. Ann. § 21-5712. Based on that illegal conduct, the illegality doctrine applies to bar plaintiff's claims arising from Kyle's violations of Kansas law.

17

court grants defendant Falcon's Motion to Dismiss because Kansas's illegality defense bars the claims asserted in this action.

## IV.   Conclusion

For reasons explained, the court grants defendant Falcon Safety Products, Inc.'s Motion to Dismiss (Doc. 20). The court dismisses Falcon as a defendant in this lawsuit. This decision renders moot Falcon's Motion to Strike Class Allegations (Doc. 22). So, the court denies that Motion to Strike Class Allegations as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Falcon Safety Products, Inc.'s Motion to Dismiss (Doc. 20) is granted. The court directs the Clerk of the Court to terminate defendant Falcon Safety Products, Inc. as a party to this lawsuit.

**IT IS FURTHER ORDERED THAT** defendant Falcon Safety Products, Inc.'s Motion to Strike Class Allegations (Doc. 22) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 30th day of June, 2023, at Kansas City, Kansas.**

>                             **s/ Daniel D. Crabtree**
>                             **Daniel D. Crabtree**
>                             **United States District Judge**