IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBBIN MESSERLI, individually and as personal representative of the Estate of Decedent Kyle Messerli, and on behalf of all others similarly situated,**

   **Plaintiff,**

v.

**AW DISTRIBUTING, INC.,
AW PRODUCT SALES & MARKETING, INC., AND NORAZZA, INC.,**

   **Defendants.**

Case No. 22-2305-DDC-TJJ

## MEMORANDUM AND ORDER

This case began with the unfortunate death of Kyle Messerli. Kyle died from Sudden Sniffing Death Syndrome, officially termed "acute 1,1-Difluoroethane intoxication," after huffing computer duster designed and manufactured by defendants. Doc. 1 at 11–12 (Compl. ¶¶ 27, 33, 35). Kyle's father, plaintiff Robbin Messerli, brought this product liability lawsuit individually and as personal representative of the Estate of Kyle Messerli and on behalf of all others similarly situated. On June 30, 2023, this court issued a Memorandum and Order (Doc. 60) granting now-terminated defendant Falcon Safety Products, Inc.'s Motion to Dismiss (Doc. 20). In that Falcon ruling, the court held that the illegality defense recognized by Kansas courts bars plaintiff's claims in this lawsuit. Doc. 60 at 17. Kansas's illegality defense prohibits recovery for the consequences of an illegal act when a plaintiff "freely and voluntarily consented to participate in the illegal act, without duress or coercion." *Parker v. Mid-Century Ins. Co.*, 962 P.2d 1114, 1116 (Kan. Ct. App. 1998). In response to the court's Falcon ruling, plaintiff asks the court to certify questions to the Kansas Supreme Court about the applicability and requirements

of the Kansas illegality defense in the products liability context. Meanwhile, defendants AW Distributing, Inc., AW Product Sales & Marketing, Inc., (collectively "AW defendants") and Norazza, Inc. ask the court to apply the court's Falcon ruling to plaintiff's claims against them as well.

So, this matter comes before the court on plaintiff's Motion to Certify Questions of State Law to the Kansas Supreme Court (Doc. 69) and, relatedly, plaintiff's Request for Hearing and Oral Argument (Doc. 78). This matter also comes before the court on AW defendants' Motion to Dismiss for Failure to State a Claim (Doc. 63) and Norazza's Motion for Judgment on the Pleadings (Doc. 61).

For reasons explained below, the court exercises its discretion to deny plaintiff's Motion to Certify (Doc. 69). Plaintiff fails to convince the court that applying Kansas's illegality defense in the products liability context is sufficiently novel to warrant certification. Many other jurisdictions have applied similar affirmative defenses in the products liability context. So, this court predicts with confidence that the Kansas Supreme Court would do the same. And, plaintiff never identifies any signals from the Kansas Supreme Court or the Kansas Legislature to suggest the proposed questions for certification are unsettled and important under Kansas law. Thus, certification is unnecessary. Also, Tenth Circuit precedent disfavors a motion to certify when the case sits in this procedural posture—that is, when the certification motion follows on the heels of an adverse ruling by the district court. The court thus denies plaintiff's Request for Hearing and Oral Argument (Doc. 78), because the briefing alone is adequate to decide the certification motion.

Also, the court grants AW defendants' Motion to Dismiss (Doc. 63) and Norazza's Motion for Judgment on the Pleadings (Doc. 61). In the court's Falcon ruling, the court held that

2

Kansas's illegality defense barred plaintiff's claims against defendant Falcon. Because plaintiff's Complaint in no way differentiates between the various defendants, the court's Falcon ruling applies with equal force to the AW defendants and Norazza. The court thus dismisses all remaining defendants and, as a result, the case itself.

This Memorandum and Order explains these decisions in this sequence. Part I provides the relevant factual and procedural background. Part II addresses plaintiff's Motion to Certify (Doc. 69) and related Request for a Hearing and Oral Argument (Doc. 78), outlining the court's ability to certify, the court's standards to certify, and the preferred procedural posture for certification. Next, in Part III, the court evaluates AW defendants' Motion to Dismiss (Doc. 63) and Norazza's Motion for Judgment on the Pleadings (Doc. 61). Finally, the court recites all its conclusions in Part IV.

## I. Background

### A. Factual Background

The following facts come from plaintiff's Complaint (Doc. 1). The court accepts these facts as true and views them in the light most favorable to plaintiff, the party opposing the Motion to Dismiss and Motion for Judgment on the Pleadings. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)); *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1087 (D.N.M. 2019) (explaining that on a motion for judgment on the pleadings the court likewise "must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party.")

Plaintiff is the father of Kyle Messerli. Doc. 1 at 11 (Compl. ¶ 30). Kyle began inhaling 1-1, Difluoroethane (DFE), a gas used in computer dusters, in 2018 upon the recommendation of a work colleague. *Id.* at 5, 14 (Compl. ¶¶ 9, 39). Huffing DFE causes an "intense and immediate" though "short-lived" intoxication. *Id.* at 5 (Compl. ¶ 9). Computer dusters are inexpensive, readily available on the retail market, and predominately produced by three manufacturers—the AW defendants, Falcon and Norazza—all named as defendants in this lawsuit. *Id.* at 5–6 (Compl. ¶¶ 10–11). Kyle routinely huffed products manufactured by these defendants, "upwards of four cans of duster per day," before "his family found him unconscious with empty cans of Ultra Duster at his bedside" on August 1, 2020. *Id.* at 11, 14 (Compl. ¶¶ 27–28, 39, 43). Kyle's official cause of death was "acute 1,1-Difluoroethane intoxication." *Id.* at 11 (Compl. ¶ 27). He was 29 years old. *Id.* at 14 (Compl. ¶ 43).

### B.     Procedural Background

Plaintiff filed his Complaint (Doc. 1) on August 1, 2022 asserting seven claims under Kansas law: (1) strict products liability—design defect; (2) strict products liability—failure to warn; (3) negligent design defect; (4) negligent failure to warn; (5) wrongful death; (6) breach of the implied warranty of merchantability; and (7) breach of express warranty. *Id.* at 60–79 (Compl. ¶¶ 156–263). About four months later, on December 15, 2022, defendant Falcon filed its Motion to Dismiss (Doc. 20). Falcon premised its Motion to Dismiss on Kansas's criminalization of the unlawful abuse of toxic vapors in Kan. Stat. Ann. § 21-5712. Doc. 21 at 3. Falcon argued that, because plaintiff's claims all rest on Kyle's criminal conduct—abusing the toxic vapors of computer dusters—the court should dismiss all claims under the *in pari delicto* doctrine. *Id.* at 12. The *in pari delicto* doctrine "generally bars a plaintiff who participated in wrongdoing from recovering damages resulting from the wrongdoing." *Id.* at 8 (citing *Rajala v. Gardner*, No. 09-2482-EFM, 2012 WL 1189773, at *12 (D. Kan. Apr. 9, 2012)).

4

More than six months later, on June 30, 2023, the court issued a Memorandum and Order (Doc. 60) granting Falcon's Motion to Dismiss. The court held that the Complaint's allegations pleaded plaintiff's participation in illegal conduct that prohibits plaintiff's recovery under the illegality defense recognized by Kansas courts. Doc. 60 at 2, 9. The court identified the illegality defense as Kansas's version of the *in pari delicto* and wrongful conduct doctrines. *Id.* at 10. Kansas courts have explained the illegality defense this way:

> The illegality defense is based on the principle that a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act. The defense will be applied to bar recovery if the evidence shows that the plaintiff freely and voluntarily consented to participate in the illegal act, without duress or coercion.

*Parker*, 962 P.2d at 1116 (first citing Kan. Stat. Ann. § 60-208(c); then citing *Lee v. Nationwide Mut. Ins. Co.*, 497 S.E.2d 328, 329 (Va. 1998)). This court held that the illegality defense applies on these facts because, first, "the Complaint alleges that Kyle Messerli 'freely and voluntarily consented to participate in the illegal act' of huffing computer dusters" and, second, "each one of plaintiff's claims arises from Kyle's illegal acts of huffing[.]" Doc. 60 at 10 (quoting *Parker*, 962 P.2d at 1116). The court predicted "that Kansas courts would apply the illegality defense to the facts here just as courts from other jurisdictions have applied it." *Id.* at 15. And so, this court concluded, "Kansas's illegality defense bars plaintiff's claims in this lawsuit." *Id.* at 17.

A few weeks later, on July 17, 2023, AW defendants filed their Motion to Dismiss (Doc. 63) and Norazza filed its Motion for Judgment on the Pleadings (Doc. 61), both asking the court to apply the illegality defense to the plaintiff's claims against them as well. A few weeks after that, plaintiff filed his Motion to Certify (Doc.69).

5

## II.     Plaintiff's Motion to Certify (Doc. 69)

Plaintiff asks the court to certify four questions to the Kansas Supreme Court about the illegality defense (and the related affirmative defenses of *in pari delicto* and wrongful conduct) under Kansas law.  Doc. 69 at 4–5.  Plaintiff seeks to inquire:  (1) whether the Kansas Supreme Court would apply these affirmative defenses in the products liability context; (2) how these affirmative defenses interact with Kansas's comparative fault statute; (3) how the court should evaluate the applicability of the defenses; and (4) whether "addiction and/or lack of adequate warnings" affects the requisite voluntariness of the illegal conduct.  *Id.*  "Whether to certify a question of state law to the state supreme court is within the discretion of the federal court." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).  In determining how best to exercise that discretion in this case, the court outlines its ability to certify, the requisite legal standard, and the preferred procedural posture, below.

### A.     Ability to Certify

A federal court may "certify a question arising under state law to that state's highest court" when "state law permits."  10th Cir. R. 27.4(A)–(B).  Kansas law allows a federal court to certify questions of law to the Kansas Supreme Court under two conditions:  (i) when a proceeding before the federal district court involves questions of Kansas law "which may be determinative of the cause then pending" and (ii) when "it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of [Kansas]."  Kan. Stat. Ann. § 60-3201.

But while Kansas law allows a federal court to certify, Tenth Circuit precedent doesn't require it.  A federal court needn't certify "'every time an arguably unsettled question of state law comes across [its] desk[],'" because a federal court shouldn't so "'trouble our sister state courts[.]'"  *Spurlock v. Townes*, 594 F. App'x 463, 466 (10th Cir. 2014) (quoting *Pino v. United*

*States*, 507 F.3d 1233, 1236 (10th Cir. 2007)); *see also Marzolf v. Gilgore*, 924 F. Supp. 127, 129 (D. Kan. 1996) ("[C]ertification is not routinely invoked whenever a federal court is presented with an unsettled question of state law.") (citation and internal quotation marks omitted); *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999) ("Certification is never compelled, even when there is no state law governing an issue.").

Instead, a court should "exercise careful 'judgment and restraint before certifying.'" *Spurlock*, 594 F. App'x at 466 (quoting *Pino*, 507 F.3d at 1236). Where "the state's highest court has not addressed the issue presented, the federal court . . . should consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo*, 843 F.2d at 407. Even where "positions are far from consistent" and a given approach "has been followed by some courts and rejected by others," a court may elect to "predict what the Kansas Supreme Court would hold if presented with the question," rather than certify. *In re Brooke Corp.*, 467 B.R. 492, 506–07 (Bankr. D. Kan. 2012). In the end, the decision to certify "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

In the present dispute, the proposed questions meet both Kansas law conditions to certify: First, whether the court should apply the illegality defense is determinative of the pending cause because, if the illegality defense applies, it bars all plaintiff's claims. Second, the court's Falcon ruling already concluded that "[n]o Kansas court has applied the illegality defense to foreclose a product liability lawsuit." Doc. 60 at 15. So, no controlling precedent exists in the decisions of the Kansas Supreme Court or the Kansas Court of Appeals to resolve the questions at issue here. Under Kansas law, the path to certify thus opens. But an open path doesn't amount to a compulsory path.

7

Instead, exercising judgment and restraint, the court may look to "decisions of other states, federal decisions, and the general weight and trend of authority," *Armijo*, 843 F.2d at 407, to predict what the Kansas Supreme Court would hold.  The court took this path in its Falcon ruling.  The court considered state court decisions from Mississippi, Michigan, Alabama, Pennsylvania, and Florida, and federal court decisions from the Tenth Circuit and the Eastern District of Kentucky.  *See* Doc. 60 at 14–17.  Convinced these decisions from other jurisdictions represent the general weight and trend of authority, the court then predicted that the Kansas Supreme Court would follow suit and apply the illegality defense to plaintiff's claims here.  *Id.* at 15.

Plaintiff argues there are cases that cut in the opposite direction.  There are.  But even if the court's Falcon ruling applied the illegality defense in a manner "followed by some courts and rejected by others," *In re Brooke*, 467 B.R. at 507, it is still within the court's discretion to elect to predict and not certify, *Lehman Bros.*, 416 U.S. at 391.  And there is more.  Plaintiff's argument opposing the illegality defense rests on an excerpt from a Pennsylvania state court dissent, which, in turn, cites two other dissents (as well as two state supreme court decisions from Texas and West Virginia).  Doc. 69 at 8–9.  Plaintiff's reliance on dissents in this fashion suggests the general weight and trend of authority doesn't tilt in plaintiff's direction after all.  And so, the court elected to predict the decision of the Kansas Supreme Court given that Kansas courts previously recognized the illegality defense and that the weight and trend of the authority from other jurisdictions supported that prediction.  The court acted well within its "sound discretion." *Lehman Bros.*, 416 U.S. at 391.  And, when the court considers the standards to certify more thoroughly below, the court reaches the same conclusion; that is, the court appropriately predicts rather than certifies.

### B. Standards to Certify

Plaintiff argues that this "case fits squarely within a wave of recent Tenth Circuit opinions seeking state supreme court certification." Doc. 69 at 5. So, the court reviews the circumstances when a case meets the standards for certification, next.

In *Larrieu v. Best Buy Stores, L.P.*, the Tenth Circuit elected to certify a question about the scope of Colorado's Premises Liability Act to the Colorado Supreme Court. 491 F. App'x 864 (10th Cir. 2012). Our Circuit decided to certify because the proposed question was "close, important, novel, and determinative." *Id.* at 866. A question is determinative when its answer could "spell the end of [a] lawsuit," *id.*, and "dispose of [a] matter[,]" *Pino*, 507 F.3d at 1238. A question is important and "sufficiently novel" when the court feels "uncomfortable attempting to decide it without further guidance." *Id.* at 1236. Such discomfort arises when a state demonstrates it has "a strong public policy preference for claims of this nature" or when "[w]hat law does exist . . . underscores that the question is an open one." *Id.* at 1237.

In both *Larrieu* and *Pino*, the Tenth Circuit elected to certify by looking to the state institutions themselves to determine novelty and importance. For instance, in *Larrieu*, the Colorado Supreme Court had granted certiorari to a case presenting a similar question, but the case settled before the Colorado Supreme Court had the opportunity to answer it. 491 F. App'x at 868. The state supreme court's interest signaled that the state had "recognized the importance and novelty of the question we face[.]" *Id.* Likewise, in *Pino*, the Oklahoma legislature had amended its wrongful death statute to allow claims similar to the Pinos' claims. 507 F.3d at 1237. Our Circuit recognized this amendment as evidence of Oklahoma's "strong public policy preference for claims of this nature." *Id.* To decipher novelty and importance, therefore, these opinions counsel the court to consider actions by the relevant state institutions, including those of

9

the state supreme court and state legislature. Finally, even when there is "some ambiguity" about the question, a court still needn't certify when it is "comfortable predicting" how a state supreme court would answer that question. *Moreno v. Zimmerman*, No. 21-8066, 2023 WL 4760343, at *9 (10th Cir. July 26, 2023).

Here, the proposed certification questions are determinative. If the Kansas Supreme Court were to determine that the illegality defense applies in the products' liability context and that addiction doesn't nullify voluntariness, then the court must grant defendants' respective Motion to Dismiss and Motion for Judgment on the Pleadings. Such rulings would spell the end of the lawsuit and dispose of the matter. But, if the Kansas Supreme Court determined either question to the contrary, the lawsuit could continue. So, the questions at issue meet the determinative requirement to certify.

But the questions don't meet the requirements for novelty and importance, at least not with the available information from the pertinent state institutions and available case law. Plaintiff contends that the questions presented in this case "are the type of novel and complex issues appropriate for certification" because of the alleged "lack of consensus in this Court" and lack of "guidance from the Kansas state courts." Doc. 77 at 7. Plaintiff further alleges that "the two Defendants now seeking dismissal also tacitly acknowledge how novel this Court's interpretation of Kansas law is because neither saw such clarity of Kansas law to allow dismissal as a matter of law with a Rule 12(b)(6) motion." *Id.* at 5 n.1.

But such allegations—even if correct—don't meet the Tenth Circuit's novelty standard as fleshed out in *Larrieu* and *Pino*. According to these two opinions, the novelty analysis includes—at least in part—whether state institutions have indicated that the pertinent law is important and unsettled. Plaintiff never identifies any signals from the Kansas Supreme Court

10

that it has interest in these questions or deems the issues unsettled, as in *Larrieu*. 491 F. App'x at 868. Nor does plaintiff demonstrate any activity in the Kansas Legislature expressing "a strong policy preference," as in *Pino*. 507 F.3d at 1237. And the present defendants' allegedly tacit acknowledgement that the court's interpretation is novel likewise doesn't convince the court. First, an argument premised on speculation about the opposing parties' presumed litigation strategy holds no weight with the court and serves only to diminish a brief's persuasive power. Second, even if "some ambiguity" existed, this court still may predict when it is "comfortable" doing so. *Moreno*, 2023 WL 4760343, at *9. And third, one of the three original defendants (Falcon) plainly *did* foresee the potential for Kansas law to apply the illegality defense. The questions at play here aren't as novel and important as plaintiff would have the court believe. So, while the questions are outcome determinative, the court needn't certify them to the Kansas Supreme Court.

One final factor similarly counsels the court not to grant the plaintiff's Motion to Certify (Doc. 69): the procedural posture of this case vis-à-vis the preferred procedural posture for certification. The court outlines the preferred procedural posture to certify, below.

## C.     Preferred Procedural Posture to Certify

Even if "the importance and novelty of [a] question both mitigate in favor of certification," a court still may decline to certify when a party "did not seek to certify the question [until] after receiving an adverse ruling[.]" *Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1241 n.6 (10th Cir. 1996); *see also Massengale v. Okla. Bd. of Examiners in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."); *Boyd Rosene*, 178 F.3d at 1364 ("Late requests for certification are

11

rarely granted by this court and are generally disapproved, particularly when the district court has already ruled."); *Armijo*, 843 F.2d at 407 (noting in its denial of certification that "'the plaintiff did not request certification until after the district court made a decision unfavorable to her"). A late request's denial doesn't cut off all relief, however, because a "'motion for certification may be brought independently and anew to the court of appeals.'" *Moreno*, 2023 WL 4760343, at *9.

Here, plaintiff filed his Motion to Certify (Doc. 69) more than seven months after defendant Falcon filed its Motion to Dismiss—and accompanying Memorandum in Support— and more than one month after this court's Falcon ruling. *See* Docs. 20, 21 (showing Falcon filed its Motion to Dismiss and Memorandum in Support of its Motion to Dismiss on December 15, 2022); Doc. 60 (showing the court granted Falcon's Motion to Dismiss on June 30, 2023); Doc. 69 (showing plaintiff filed his Motion to Certify on August 7, 2023). In its Memorandum in Support of its Motion to Dismiss (Doc. 21), defendant Falcon put plaintiff on notice that the court could "consider whether the *in pari delicto* doctrine bars Plaintiff's claims" and that "Kansas courts have not addressed the *in pari delicto* doctrine in the context of criminal product use[.]" Doc. 21 at 9. Plaintiff could have presented a motion to certify, based on these allegations alone, during any of the six months before the court's Falcon ruling—but he didn't. Instead, plaintiff waited, moving for certification only once he had received an adverse ruling terminating defendant Falcon as a party to this lawsuit. Doc. 60 at 18.

Indeed, plaintiff waited even longer. He waited until after Norazza and AW defendants filed motions invoking the court's Falcon ruling and arguing the ruling applies to them, as well. *See* Doc. 61 (showing Norazza filed its Motion for Judgment on the Pleadings on July 17, 2023); Doc. 63 (showing AW defendants filed their Motion to Dismiss on July 17, 2023). Plaintiff

12

asserts that he alerted defendants that he would seek certification, and that the defendants then "rushed to file motions" right before a status conference scheduled to discuss the certification issue. Doc. 77 at 4. But plaintiff never contests that he had six months before the court's Falcon ruling in which he could have filed a motion to certify. Indeed, the most appropriate time to file would have been during that six-month period, long before the scheduled status conference and allegedly rushed filings.

By waiting to file his certification motion until such a late date, plaintiff put the motion into the "rarely granted" and "generally disapproved" categories of certification requests. *Boyd Rosene*, 178 F.3d at 1364. While plaintiff correctly recites that denying certification on account of untimeliness isn't a "bright line rule," Doc. 77 at 3, Tenth Circuit precedent disfavors granting plaintiff's motion directly after the district court's adverse decision, *see Massengale*, 30 F.3d at 1331. So, the court exercises its discretion and denies plaintiff's Motion to Certify (Doc. 69) because of its procedural posture.

The court, in its discretion, also denies plaintiff's corresponding Request for a Hearing and Oral Argument (Doc. 78), which aimed to provide another forum for plaintiff to present arguments supporting its certification request. The briefs are expertly prepared, and they are more than adequate to rule on the certification motion. Plaintiff may seek its requested relief "independently and anew" with an appeal to the Tenth Circuit. *Moreno*, 2023 WL 4760343, at *9.

### III. AW Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 63) and Defendant Norazza's Motion for Judgment on the Pleadings (Doc. 61)

AW defendants move the court for dismissal under Fed. R. Civ. P. 12(b)(6). Norazza moves the court for a judgment on the pleadings under Fed. R. Civ. P. 12(c). These motions, in essence, recite the court's Falcon ruling and assert that Kansas's illegality defense bars plaintiff's

claims against Norazza and AW defendants as well, just as it did against their former co-defendant Falcon. The court begins its analysis of the two motions with the legal standard for Rule 12(b)(6) and Rule 12(c) motions below.

Rule 12(b)(6) provides that the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(c) permits a party to move for judgment on the pleadings, after "the pleadings are closed," provided that the motion is "early enough not to delay trial." Fed. R. Civ. P. 12(c). The court evaluates a judgment on the pleadings under Rule 12(c) by the same standard as it evaluates dismissal under Rule 12(b)(6). *See Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013). This standard requires the court to enter judgment on the pleadings or dismiss the case unless the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Here, plaintiff has pleaded facts to establish that Kyle engaged in illegal conduct in violation of Kan. Stat. Ann. § 21-5712, a provision criminalizing the unlawful abuse of toxic vapors. *See* Doc. 60 at 5–7. The illegality of Kyle's conduct—huffing of Difluoroethane from computer dusters—bars plaintiff from recovering on any claims premised on this conduct under Kansas's illegality defense.[1] Plaintiff asserts that Kyle's conduct doesn't meet the voluntariness prong of the illegality defense because "addiction often negates voluntariness and consent" and

---

[1] As noted previously, Kansas courts have explained the illegality defense as follows: "The illegality defense is based on the principle that a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act. The defense will be applied to bar recovery if the evidence shows that the plaintiff freely and voluntarily consented to participate in the illegal act, without duress or coercion." *Parker*, 962 P.2d at 1116.

14

Kyle's addiction meant that he "could not voluntarily choose to avoid using the duster cans." Doc. 69 at 11. But the court already has decided on the face of the Complaint that Kyle freely and voluntarily consented to participate in the illegal act. Doc. 60 at 10 (quoting *Parker*, 962 P.2d at 1116 and citing the Complaint's allegations "that Kyle began huffing computer dusters in 2018, after a work colleague introduced him to the intoxicating effects of inhaling DFE."). Also, the court already has held that the illegality defense, complete with its voluntariness requirement, "applies to plaintiff's claims . . . because each claim arises from Kyle's illegal conduct[.]" *Id.* at 11.

Given these holdings, the Complaint doesn't "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Kansas illegality defense bars all avenues to that relief and prevents the defendants from being "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This bar to recovery must apply equally to all defendants, unless the Complaint differentiates between defendants in a way that would alter that bar's applicability. It doesn't.

As AW defendants rightly identify, plaintiff's Complaint doesn't distinguish between the wrongdoing of the various defendants in this case. Doc. 64 at 6 (citing Doc. 1 at 6–7 (Compl. ¶¶ 18, 20–25)). The Complaint alleges the defendants' products are all "identical in composition," and that the defendants "all followed the same patented procedure to add DB" to the computer duster. Doc. 1 at 6, 63 (Compl. ¶¶ 18, 171). The complaint likewise brings claims against all defendants indiscriminately, grouping all of them together, for example, as falling "within the definition of 'manufacturers' under the Kansas Products Liability Act." *Id.* at 60–61, 63, 68, 73 (Compl. ¶¶ 158, 171, 200, 223). Because plaintiff's Complaint doesn't differentiate between defendants, neither can the court differentiate in applying Kansas's illegality defense to bar plaintiff's claims against all named defendants.

So, Kansas's illegality defense, which barred plaintiff's claims against defendant Falcon, necessarily bars plaintiff's claims against AW defendants and Norazza as well. With all claims barred, plaintiff can't meet the pleading requirements of *Twombly* and *Iqbal*. The court thus grants AW defendants' Motion to Dismiss (Doc. 63) and Norazza's Motion for Judgment on the Pleadings (Doc. 61), and thereby dismisses the case.

### IV.     Conclusion

The court denies plaintiff's Motion to Certify (Doc. 69) and Request for a Hearing and Oral Argument (Doc. 78) because it predicts the Kansas Supreme Court would apply the Kansas illegality defense to bar plaintiff's claims. Convincing case law from other jurisdictions supports this court's decision to predict, without certifying, as does the novel-and-important analysis. Also, when plaintiff filed the certification motion, he had received an adverse decision in the court's Falcon ruling, and our Circuit disfavors granting certification motions after an adverse ruling. Finally, this denial doesn't hinder plaintiff's ability to move to certify anew at the appellate level.

The court grants AW defendants' Motion to Dismiss (Doc. 63) and Norazza's Motion for Judgment on the Pleadings (Doc. 61). Kansas's illegality defense bars plaintiff's claims against all defendants in accordance with the court's Falcon ruling.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Robbin Messerli's Motion to Certify Questions of State Law to the Kansas Supreme Court (Doc. 69) is denied. Correspondingly, plaintiff Messerli's Request for Hearing and Oral Argument (Doc. 78) is denied.

**IT IS FURTHER ORDERED THAT** AW defendants' Motion to Dismiss (Doc. 63) is granted with prejudice. The court directs the Clerk of the Court to terminate defendants AW Distributing, Inc. and AW Product Sales & Marketing, Inc. as parties to this lawsuit.

**IT IS FURTHER ORDERED THAT** defendant Norazza's Motion for Judgment on the Pleadings (Doc. 61) is granted. The court dismisses all plaintiff's claims against Norazza with prejudice as barred under Kansas's illegality defense.

With this Order, the court now has decided all claims in the case. So, the court directs the Clerk of the Court to enter judgment in favor of all defendants consistent with this Order and its previous Memorandum and Order dismissing defendant Falcon Safety Products, Inc. (Doc. 60).

**IT IS SO ORDERED.**

**Dated this 20th day of October, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
